FILED
SUPERIOR COURT
OF GUAM

2021 JUL 16 AM 8: 00

BY_____

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| TAKAKO B. GUTHRIE AND JOSEPH A. GUTHRIE, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | Superior Court Case No. SP0094-20 |
| Petitioners/Plaintiffs, | *AMENDED* |
| | **DECISION AND ORDER RE: RECUSAL OF COURT UNDER 7 GCA § 6107** |
| vs. | |
| BOARD OF TRUSTEES OF THE GOVERNMENT OF GUAM RETIREMENT FUND, | |
| Respondents/Defendants | |

### INTRODUCTION

This matter is before the Honorable Judge *Pro Tempore* John Thomas Brown (" Judge Brown"), for the limited purpose of deciding the issue of the competency of Judge *Pro Tempore* Maria G. Fitzpatrick ("Judge Fitzpatrick") to hear the captioned matter, as alleged by Takako B. Guthrie and Joseph A. Guthrie, Individually and on Behalf of All Others Similarly Situated, Petitioners, in their written Statement Objecting to Competency, and seeking recusal of, Judge Fitzpatrick. Petitioners/Plaintiffs are represented by attorney Samuel S. Teker.

### BACKGROUND

On July 10, 2020, Petitioners/Plaintiffs filed a Petition for a Preemptory (sic) Writ of

Mandate; Alternatively, Complaint for Declaratory and Injunctive Relief, seeking to obtain certain spousal retirement benefits claimed to be due them from the Respondents. On May 10, 2021, Presiding Superior Judge Alberto C. Lamorena III, wrote Chief Justice F. Philip Carbullido to request "that a Judge *Pro Tempore* be appointed in this case because all the Superior Court Judges, including [himself], have disqualified themselves pursuant to 7G.C.A. §§ 6105 and 6106." Judge Fitzpatrick was appointed as a Judge *Pro Tempore* in this case on May 20, 2021. On May 24, 2021, Judge Fitzpatrick filed a Form Three - Disqualification Notice of Potentially Disqualifying Facts (herein, the "Disqualification Notice"), in the form and substance approved by the Guam Supreme Court in Promulgation Order No. 13-003-01 (herein, "Form Three"). Promulgation Order No. 13-003-01 explicitly applies "in all cases where 7 GCA § 6105 or 7 GCA § 6106 are implicated". While §§ 6105 and 6106 provide, respectively, the grounds for a judge's disqualification, and the duty to disclose a disqualifying condition, § 6107 spells out the procedure whereby a party may pursue disqualification of a Judge:

> Whenever a Justice or Judge who shall be disqualified under the provisions of this Chapter to sit or act as such in any action or proceeding pending before him or her neglects or fails to declare his or her disqualification in the manner provided by this Chapter, any party to such action or proceeding who has appeared therein may present to the court and file with the clerk a written statement objecting to the hearing of such matter ... setting forth the fact or facts constituting the ground of the disqualification of such Justice or Judge.

As required of the Form Three notice, Judge Fitzpatrick acknowledged certain Grounds of Disqualification (7 GCA § 6105); acknowledged certain facts, some of which were *potentially* within the purview of § 6105; and expressed her view that "I do not believe [those facts] disqualify me from sitting or acting as the judge in this case".

Judge Fitzpatrick's Disqualification Notice cited the following three unelaborated potentially disqualifying facts:

1. I am retired from the Government of Guam and I am receiving a pension. My husband is my beneficiary.

2. I worked at the Office of the Attorney General for 21 years and during portions of that time Joseph A. Guthrie also worked there.

3. During the period Joseph A. Guthrie was Chief Deputy he filed a lawsuit to stop about 6 attorneys from getting increments. I was one of the attorneys. Upon information and belief the case was eventually dismissed. We received our increments and attorney fees.

Consistent with the mandated substance of Form Three, the Disqualification Notice advised: "[a] party who wishes to pursue my disqualification based on these facts must file their objection to competency pursuant to 7 G.C.A. § 6107 within fourteen (14) days of the filing of this notice for such objection to be considered timely." Accordingly, on June 7, 2021, fourteen (14) days after filing of Judge Fitzpatrick's Disqualification Notice, Objectors Takako B. Guthrie and Joseph A. Guthrie (collectively herein, "Objectors") timely filed a Statement Objecting to the Competency of Judge *Pro Tem* Maria Fitzpatrick to Hear This Case (herein, the "Objection Statement"). In turn, Judge Fitzpatrick timely filed[1] an Answer to Petitioners' Statement of Disqualification on June 16, 2021 (herein, the "Disqualification Answer").

## THE ALLEGED FACTS CONSTITUTING DISQUALIFICATION

---

[1] Section 6107 requires: "Within ten (10) days after the service of such statement as above provided, or ten (10) days after the filing of any statement, whichever is later in time, the Justice or Judge alleged therein to be disqualified may file with the clerk ... his or her written answer admitting or denying any or all of the allegations contained in such statement and setting forth any additional fact or facts material or relevant to the question of his or her disqualification."

**(1) Disqualifying Financial Interest (7 GCA §§ 6105(b)(4) and (d)(4))**

Judge Fitzpatrick's Disqualification Notice stated she is a retired Government of Guam employee currently receiving a pension, to which her husband is her beneficiary, a fact that she considered, without elaboration, does not disqualify her. Objectors point to parts of 7 GCA §§ 6105(b)(4) and (d)(4) as authority for this alleged disqualification:

> (b) A Judge shall also disqualify himself or herself in the following circumstances, but if, following complete disclosure to all parties in the proceeding of the reasons for his or her disqualification, all parties agree to having the Judge continue to sit in the proceedings, he or she need not disqualify himself or herself:
>
> (4) Where he or she knows that he or she, individually ... has a financial interest in the subject matter in controversy[2] ..., *or in any other interest that could be substantially affected by the outcome of the proceeding.*"
>
> (d) For the purpose of this section the following words or phrases shall have the meanings indicated:
>
> (4) Financial interest means ownership of a legal or equitable interest, however small....

Objection Statement, pp. 4-5; italics added.

Objectors argue that Judge Fitzpatrick should be disqualified by two of the three distinct disqualifying factors specified in§ 6105(b)(4): first, a "financial interest"; and second, "any other interest that could be substantially affected by the outcome of the proceeding". (The third is being a party to the subject matter in controversy or a party to the proceeding.)

> First, "Judge Fitzpatrick is a member of the Defined Benefit Plan. As such, Judge Fitzpatrick has *a financial interest in receiving her contracted-for benefits from the Retirement Fund.* Even though Judge Fitzpatrick's financial interest in the Retirement

---

[2] The subject matter in controversy here is whether Takako B. Guthrie (herein, "Spouse Guthrie") is entitled to certain "spousal benefits" from the Government of Guam Retirement Fund administered by Respondent/Defendants.

Fund is small relative to the size of the Fund, in respect to a disqualifying financial interest, size doesn't matter. Consequently, Judge Fitzpatrick has a 'financial interest' in the money in the possession of the Retirement Fund." (*id.*, p. 4-5; italics added)

Second, "Judge Fitzpatrick *has a financial interest in the Retirement Fund which could be 'substantially affected'* by the outcome of this case (id., p 5). Why? Because: (1) If the Guthries are successful in gaining eligibility for surviving spouse benefits for themselves and class members, the liabilities of the Fund may be expected to increase, and (2) the outstanding Unfunded Actuarial Accrued Liability (hereinafter, 'Unfunded Liability') already 'substantially affects' Judge Fitzpatrick's *financial interest in receiving her contracted-for benefits* from the Retirement Fund. ... Ipso facto, any increase in the Unfunded Liability will *'substantially affect' Judge Fitzpatrick's financial interest in the Retirement Fund.*" Objectors argue that 'substantially affected' refers not only to increases in the value of a judge's financial interest, but to threats to the solvency of the Fund, and, consequently, the threat posed by additional unfunded liabilities to Judge Fitzpatrick's financial interest in receiving her contracted-for benefits." (*id.*, p. 5; italics added)

Judge Fitzpatrick's response did not deny the presence of a financial interest in the outcome of the case. Rather, she claimed that, in this particular instance, it was not a disqualifying event that would prevent her from hearing the underlying matter under the so-called Rule of Necessity. She explained:

All the Judges of the Superior Court have disqualified themselves therefore the rule of necessity may be applied. Under the rule of necessity, it is the duty of the disqualified judge to hear and decide a controversy, however disagreeable it may be. *Schwab v. Ariyoshi*, 555 P2d 1329, 1332 (Haw 1978). The rule of disqualification must yield to the demands of necessity and a judge may act in a proceeding where he is disqualified by interest, relationship, or the like so that his refusal to act would destroy the only tribunal in which relief could be had and thus prevent a determination of the proceeding *Id.*"

Further, "[t]he United States Supreme Court has held, 'although a judge had better not, if it can be avoided, take part in the decision of a case in which he has any personal interest, yet he not only may but must do so if the case cannot be heard otherwise.' *U.S. v. Will*, 449 U.S. 200, 213 (1980)."

Finally, "The rule of necessity was invoked in *Ada v. Gutierrez* 2000 Guam 22 ¶14, 'because every Judge on the Supreme and Superior Courts of Guam was appointed by

either one of the parties in this case, every judge who could hear this case could be accused of appearing partial. If every judge could appear partial it becomes less important for the [ challenged judge] to disqualify himself.'"
(Disqualification Statement, p 3-4.)

### (2) Alleged Disqualifying Personal Bias or Prejudice Concerning a Party (§ 6105(b))

Objectors point to 7 GCA § 6105(b)(1) as a second ground for disqualification, based on an alleged personal bias or prejudice of Judge Fitzpatrick concerning a party, Joseph A. Guthrie (herein, singularly, "Guthrie").

§ 6105 provides in pertinent part: "(b) A Judge shall also disqualify himself or herself in the following circumstances: ...

"(1) Where he or she has a personal bias or prejudice concerning a party...."

Objectors refer to Judge Fitzpatrick's Disclosure Statement that notes her working association with Guthrie over the course of 21 years, which she recalls as a "potentially disqualifying" fact. Objectors however fail to describe "the fact or facts constituting the ground of disqualification", merely hypothesizing:

*"On the one hand*, such working relationship *could* engender a favorable impression in the judges' mind of her erstwhile attorney co-workers credibility, integrity of work product, and industriousness, to a disadvantage of other parties subsequently appearing before the judge in the same action. *On the other hand*, the course of such a work relationship *could* reveal the judge's prejudices toward her former co-worker. Unfortunately, the latter is what happened here. (Objection Statement pp. 5-6; italic emphasis added.)"

Objector's Objection Statement explicitly *alludes* to certain potentially disqualifying facts of personal bias or even appearance of prejudice:

"Accompanying this Statement Objecting to the Competency of Judge Pro Tem Maria

Fitzpatrick To Hear This Case, is an Exhibit 1. Exhibit 1 is entitled Amended Declaration of Joseph A. Guthrie in Support of Motion to Disqualify Maria Fitzpatrick. Review of Exhibit 1 discloses that, during Guthrie's employment at the OAG, *Judge Fitzpatrick subjected Guthrie to public humiliation*, Exhibit I-Page 1-2; *publicly expressed hostility to Guthrie*, Exhibit 1, page 2; *encroached on Guthrie's assigned work*, Exhibit 1, page 2- 3; *undermined Guthrie's work*, Exhibit 1, page 3; *wrote and disseminated a written epigram disparaging Guthrie* to fellow office mates, Exhibit 1, page 1; *excluded Objector from social occasions and alienated the affections* Objector's friends, Exhibit 1, page 3. and *disrespected Guthrie when she lied to him* to circumvent the AGO leave policy, Exhibit 1, pages 5-6. Even after Guthrie went into private practice after leaving the Office of Attorney General, Judge Fitzpatrick_*undermined Guthrie* at the law firm where he was employed. Exhibit 1, page 4." (Italic emphasis added.)

However accurate these references are to *potentially* disqualifying facts, there is no such Exhibit 1, or other substantiating facts, in the record of this case. Although the Objection Statement references an Exhibit 1, the filed objection presented to the court and lodged with the Superior Court Clerk's office did not include such exhibit[3]. The Objection Statement, without the facts promised in Exhibit 1, leaves only bare conclusions and speculation, not the "fact or facts constituting the ground of disqualification" required of 7 GCA § 6107.

Objectors *allude* also to a potentially disqualifying fact situation that they assert to evidence personal bias or prejudice. But they again hypothesize "[i]t is Guthrie's position that given [Judge Fitzpatrick's] *track record of attacks* on Guthrie, Judge Fitzpatrick's willingness to sit on this case *might be attributable* to her seeking revenge for Guthrie's submitting the Amended Declaration in the other proceeding. *On the other hand*, Judge Fitzpatrick's willingness to sit on this case *might be attributable* to something else entirely as set forth below." (Objection Statement, p. 7.) There is no such factually substantiated track record of attacks or revenge in

---

[3] The Superior Court Clerk of Court confirmed with Plaintiffs/Petitioners' Attorney that Exhibit 1 was not

the record of this recusal matter. It is all hypothesis.

Objectors secondly assert, as a fact indicating bias or prejudice, that Judge Fitzpatrick has a "close friend of 35 years", Judy Mason, whose husband had also worked in the AGO before retiring, and has recently died, on March 24, 2021. (Objection Statement, p. 8) Objectors surmise,

> "John Patrick Mason had retired under 4 GCA 8130(a)(2), meaning that under the current policy and practice of the Board of Trustees of the Government of Guam Retirement Fund, his wife, Judy Mason, is not be eligible for surviving spouse benefits. This is the very policy that the Guthries are challenging in this lawsuit. Therefore, Judge Fitzpatrick's willingness to sit on this case *might* be *attributable to her intention* to rule on this case in such a way that her friend of 35 years becomes eligible for surviving spouse benefits.
>
> "Judge Fitzpatrick has indicated to Guthrie that she has not 'socialized' with the 'Masons' since 2004. Exhibit 1, page 6. *To Guthrie*, Judge Fitzpatrick's use of the word 'Masons' was *an obvious ploy* to hide the fact that Judge Fitzpatrick has socialized with Judy Mason since 2004, albeit not socializing with the Masons as a couple since 2004. *This statement left open the possibility* that Judge Fitzpatrick had continued to be close friends with Judy Mason from 2004 up to the current day." (*Id.*; italic emphasis added.)

Of note, Objectors advise, "[t]o explore *this possibility*, [of bias or prejudice based on the alleged close friendship with Judy Mason] Judge Fitzpatrick's Answer should not be legally sufficient until it includes responses, *made under oath....*" [4] (*Id.*;bold italic emphasis in original,

---

submitted with the Objection when filed and that the Objection was filed as presented to the Clerk's office.

[4] The Objection Statement several times reiterates the requirement that Judge Fitzpatrick verify statements in this proceeding: "If Judge Fitzpatrick files the Answer required by 7 GCA 6107, her Answer should be deemed legally insufficient by the reviewing Judge if her Answer does not address with specificity each statement in Exhibit 1. *Van dox* (sic), at ¶21-24" (Objection Statement p. 7, ln 7); "If Judge Fitzpatrick files a General Denial as her Answer, her Answer should be deemed legally insufficient by the reviewing judge. 7 GCA 6107 provides, in relevant part: Every such statement and every answer shall be verified in the manner prescribed for the verification of pleadings. Judge Fitzpatrick should not be allowed to file an unverified Answer. An unverified Answer should be treated as legally insufficient by the reviewing judge." *Id.*

simple italics added.)

Objectors conclude their discussion of disqualification on the basis of section 6105(b)(1) bias with more conjecture, rather than facts: "Insofar as Judge Fitzpatrick's willingness to sit on this case *might be attributable* either to a desire to exact revenge on Guthrie, *or* an intention to help her friend, Judge Fitzpatrick's judgment, if she sits on this case, *could be* affected by bias." (*Id.*, p. 9; italic emphasis added)

Judge Fitzpatrick answered the Objectors' allegations of bias and prejudice against Joseph A. Guthrie with the following unequivocal statements:

> "[T]his list of wrongs alleged is not substantiated by any document or statement; without specific proof of these interactions the [alleged] bias is purely speculative to the point of being fanciful or imagined.
>
> "I deny that I have any grievance with Joseph A. Guthrie or Takako B. Guthrie.
>
> "I do not have any reason to exact revenge.
>
> "Disqualification is not required if an allegation that a judge might not be impartial is only speculative, conclusory, spurious or vague. *Carbana v. Cruz* 595 F. Supp 585, 587 (D.P.R.1984) *Aff'd*, 767 F.2d 905(1st Cir. 1985)." (Disqualifying Answer, p. 4); )

Judge Fitzpatrick's answer to Objectors' claim of bias in favor of Judy Mason is also a categorical denial:

> I deny that Judy Mason is my close friend of 35 years. I have not had a relationship with Judy Mason since approximately 2004. I have not visited Judy Mason in her home from approximately 2004 to present. I have not met Judy Mason in coffee shops or restaurants from approximately 2004 to present. I have not spoken to Judy Mason by phone at any time that I recall after 2004 to present. I have not communicated with Judy Mason by any other means or in other places at any time after 2004 other than to say hello if I ran into her at a store. I have no personal knowledge regarding whether she is receiving a

survivors benefit from the Government of Guam Retirement fund as a result of the death of her husband Patrick Mason. (*Id.* at 5)

### (3) Disqualifying Appearance of Impartiality (§ 6105(a))

Objectors cite 7 GCA § 6105(a): "[a]ny Judge shall disqualify himself or herself in any proceeding in which his or her *impartiality might reasonably be questioned.*" (Objection Statement, p. 9; italics added). Objectors take issue with Judge Fitzpatrick's depiction, in her Disqualification Notice, of a particular legal action that became adversarial and involved Guthrie and then-attorney Fitzpatrick, in particular this characterization. She wrote,

> "During the period Joseph A. Guthrie was Chief Deputy he filed a lawsuit to stop about 6 attorneys from getting increments. I was one of the attorneys. Upon information and belief the case was eventually dismissed. We received our increments and attorney fees." (Disqualification Answer, p. 5-6)

Objectors offered clarification: "The case [described by Judge Fitzpatrick] was *Joseph A. Guthrie, in his official capacity as Certifying Officer of the Department of Law, Plaintiff, v. Douglas B. Moylan, in his official Capacity as head of the Department of Law, Defendant, and Robert Weinberg, Alan Haeuser, Maria Fitzpatrick and Deborah Rivera, Defendant-Intervenors,* Civil Case No. CV0929-05. Judgment was entered in this case on February 10, 2009." (Objection Statement, p 10) Objectors also clarified the ultimate positions of the parties in that case, quoting the judgment therein: "Judgment is hereby entered in favor of the Defendant and Defendant Intervenors on the basis of: 1) the April 28, 2006 Decision and Order granting judgment on the pleadings in favor of the Defendant and Intervenor Weinberg; 2) the July 11, 2006 Decision and Order *granting intervention* to Haeuser, *Fitzpatrick* and Rivera; 3) the

November 8, 2006 withdrawal of the Plaintiff's motion for clarification of judgment; and the December 12, 2006 Stipulation and Order to recover attorney's fees." *Id*. (italics added). This clarification was only useful to provid dates that show the case was well under way no later than April 2006, and was resolved in February 2009. Judge Fitzpatrick was appointed Judge *Pro Tempore* for this matter on May 20, 2021, about twelve years after that event.

Objectors re-characterized the subject matter of that case: "[t]his case involved implementation of a law relating to attorney pay. Guthrie was Certifying Officer of the Office of Attorney General at the time;" adding, "Guthrie sought, through this lawsuit, guidance from court how the attorney pay law should implemented." *Id*. at 10-11. But where was the animus, or preference, underlying an appearance of impartiality in this characterization?

Objectors also disagreed with some of the potentially disqualifying facts as described by Judge Fitzpatrick:

> "Contrary to Judge Fitzpatrick's statement in Form 3, the case did not involve 'increments'.... Instead, the case involved how attorneys should be 'slotted' on an attorney pay scale enacted by an attorney pay law.; as well, 'contrary to Judge Fitzpatrick's statement in Form 3, Judge Fitzpatrick was not one of only six attorneys affected. The attorney pay law affected all Government attorneys...." *Id*. at 10.

\*\*\*

> "Most significant, Judge Fitzpatrick omitted to indicate on Form 3 that she was an intervenor in the case. The above quoted statement in Form 3 would lead the reader to believe that she was a defendant in the case, and that case was brought by Guthrie to prevent her from receiving increment(s)." *Id*. at 11

Objectors concluded, saying:

> "[i]t would strain a reasonable observer's credulity that Judge Fitzpatrick could serve as an impartial judge of a case involving a party when she had opposed that very same party as a self- appointed spokesman for fellow employees.

...

"Under 7 GCA 6105(a), what matters is not 'actual bias,' but 'the appearance of bias'. *Dizon v. Super. Ct. (People)*, 1998 Guam 3, 10 n.3. Thus, maintaining the appearance of impartiality requires that this case be assigned to another judge." *Id.*

Judge Fitzpatrick responded with a more expansive statement of the *Dizon* interpretation of the disqualifying bias standard of recusal in § 6105(a) than that provided by Objectors:

> "'[T]he standard of recusal is the appearance of impropriety and that no actual showing of bias is necessary for recusal to lie' *Dizon v. Superior Court* 1998 Guam 3 ¶ 8. The appearance of bias *is judged from the standard of a 'reasonable person' who knows all the facts, and understands the 'contexts of jurisdictions, parties, and controversies involved.*' Id. (quoting *Ada v. Gutierrez*, 2000 Guam 22 ¶¶ 12-13). *People v. Camaddu*, 2015 Guam 2 ¶ 74 (internal citations omitted)." (Disqualification Answer, p. 5, italic emphasis added)

In her Disqualification Answer, Judge Fitzpatrick revised her description of the subject case, taking note of its vintage, faded effect, and passing drama: "The case of *Joseph A. Guthrie, in his official Capacity v. Douglas B. Moylan in his official Capacity Superior Court Civil Case no. CV0920-05* happened many years ago and does not affect me personally in any way emotionally or financially. The case was resolved favorably by dismissal and I was awarded attorney fees. I have no grudge against Plaintiff for this or anything else." (Disqualification Answer, p. 5). She defended her actions, alluded to by Objectors, stating "I deny Petitioner's vague allegations of ill-will toward him." *Id.* at 6.

## ANALYSIS

### (1)(a) the Alleged Disqualifying Financial Interest

Objectors argue Judge Fitzpatrick is disqualified by 7 GCA § 6105(b)(4) due to a "financial interest" in the "subject matter in controversy", namely "a financial interest in

receiving her contracted-for *benefits* from the Retirement Fund" (Objection Statement, p. 4; italics added). Objectors claim "7 GCA 6105(d)(4) provides, ***in relevant*** part: 'Financial interest means ownership of a legal or equitable interest, 'however small'." (*Id.*; bold italics added.) Objectors specifically claim "Judge Fitzpatrick has a 'financial interest' in *the money* in the possession of the Retirement Fund, within the meaning of 7 GCA §6105(b)(4) *and (d)(4).*" (Italics added).

But, in the *full* relevant law of section 6105(d)(4)(A), Judge Fitzpatrick has but a financial *benefit* in the retirement disbursements made to her, and *no financial 'interest'* in the 'money in possession of the Retirement Fund'. Section 6105(d)(4)(A), explicitly *excludes* from the *general definition* of financial interest, "ownership in a mutual or common investment fund that holds securities[5] unless the Judge participates in management of the fund." 7 GCA § 6105(d)(4)(A). The Guam Government Retirement Fund ("GGRF") is reasonably described, funded, managed, and distributed as a mutual or common investment fund: it is not a "financial interest" within the *full* meaning of § 6105(d)(4).

A member's interest in the assets of the GGRF is indirect, in much the same way that a shareholder has no claim to any particular asset of a corporation (nor personal liability for any corporate debt), and similar to a trust beneficiary's legal claim to any particular common asset held in trust. The GGRF is constrained by statute:

---

[5] "A mutual fund is a company that pools money from many investors and invests the money in securities such as stocks, bonds, and short-term debt. The combined holdings of the mutual fund are known as its portfolio. Investors buy shares in mutual funds. Each share represents an investor's part ownership in the fund and the income it generates." https://www.investor.gov/introduction-investing/investing-basics/investment-products/mutual-funds-and-exchange-traded-1

4 GCA § 8138. Board of Trustees.

(a) The general administration and *the responsibility for the proper operation of the Fund, and for making effective the provisions of this Article*, shall be vested in a Board of Trustees.

4 GCA § 8143. Investment of Funds

(a) The reserves of the [Retirement] *Fund in excess of requirements for current operations* shall be invested and rein (sic) vested by or under authority of the Board of Trustees.

...

(c) *All proceeds and income from investments, of whatever nature, shall be credited to the accounts of the Fund.*[6] Transactions in marketable securities shall be carried out at prevailing market prices.

(d) *The Board may commingle securities and moneys subject to the crediting of receipts and earnings and charging of payments to the appropriate accounts* established by this Chapter.

4 GCA § 8139.1. Fiduciary Duties.

(a) The members of the Board of Trustees *stand in a fiduciary relationship to the beneficiaries* of the Retirement Fund in regard to the management of the Fund.

(b) The members of the Board of *Trustees shall discharge their duties with respect to management* of the Retirement Fund:

---

[6] The Government of Guam Retirement Fund Financial Statements, September 30, 2020, and 2019, describe its assets for the stated most recent period. The essential feature of the retirement fund is the use of investments to cover liabilities to beneficiaries of two plans: one a direct benefit plan (DB Plan) and the other a direct contribution plan (DC Plan). For the 2020 period, the statements show the DB Plan had total "investments" of $1,978,798,494, made up of Common Stocks, U.S. Government Securities, Corporate Bonds and Notes, Money Market Funds, and Mutual Funds, as well as $2,898,149 in cash and equivalents. The DC Plan held $394,945,071 in investments and $4,782,863 in cash and equivalents. The total investments held by the Guam Retirement Fund were in excess of 2.3 Billion dollars. The total cash and equivalents amount to less than 7.7 Million dollars. Typically, funds keep cash and equivalents on hand to provide liquidity to pay operational expenses and facilitate returns on investments and meet other non-investment contingencies, money not kept for paying retirement benefits. Members of the GGRF have a financial interest in the payment of retirement benefits derived from fund investments, both net capital from trades and returns of dividends and interest on securities held.

(1) *solely in the interest of the members and beneficiaries* of the Fund, and *for the exclusive purpose of providing benefits to members* and beneficiaries and defraying reasonable expenses of administering the Fund....

(All emphasis in these quoted statutes added).

Of particular relevance to Objector's claim of an interest *in the money* held by GGRF is,

4 GCA § 8165. **Interest of Members in Fund**: "Each member shall, *by virtue of the payment of contributions* to the system, receive *a vested interest in such contributions and in consideration of such vested interest, shall be conclusively deemed to undertake and agree to pay the same and to have the amounts deducted from his compensation* as herein provided."

That "vested interest" describes a **security interest** *held by GGRF* in *member contributions*, to allow the Fund to operate in reliance of those continued contributions for the benefit of the Fund.

It does not describe a membership claim to any part of the Fund itself.

In addition to the relevant statutes, the GGRF is primarily made up of two stand-alone *plans*, a "Deferred Compensation Plan" and a "Defined Contribution Plan"[7]. Both plans contain a description of various "accounts" of the respective plans. Each of the plans contains a statement of how investment earnings and losses are to be allocated to the various accounts.

Both of those plans contain identical *formulae* used to allocate those earnings and losses:

"The *balance of your Accounts will be adjusted at on an ongoing basis for earnings and losses* of the trust fund attributable to investment of the account balances. *If the Plan's assets are invested in a general fund, such earnings and losses will be allocated to the Accounts of all participants on a pro rata basis* based on their Account balances. However, to the extent that the Plan allows participants to direct the investment of their Accounts, earnings and losses will be allocated to each participant's Accounts based on the earnings and losses attributable to such Accounts."

---

[7] As the workings of the GGRF and its plans is not of particular pertinence to this recusal matter, see summary descriptions of the GGRF's plans at https://www.ggrf.com/public-review-documents.

The Committee on Codes of Conduct of the Judicial Conference of the United States provides a set of ethical principles and guidelines adopted by the Judicial Conference, as well as a Code of Conduct. Its guidance runs in line with that of 7 GCA Chapter 6 insofar as judicial disqualification is concerned. The Judicial Conference has authorized its Committee on Codes of Conduct to publish formal advisory opinions on ethical issues.[8] Relevant here, is Advisory Opinion No. 106: Mutual or Common Investment Funds (March 2011):[9]

> "This opinion addresses recusal considerations related to ownership of mutual or common investment funds ("mutual funds"). Canon 3C is intended to set a standard for economic disqualification that assures impartiality and the appearance of impartiality, while also allowing judges to make non-disqualifying investments. *We approach our analysis with the following principle firmly in mind: that the Code should be interpreted to the extent reasonably possible to enable judges to invest in funds without transgressing the Code or engaging in a conflict of interest.*

> "Canon 3C(1)(c) requires a judge to disqualify himself or herself when the judge knows that he or she "has a financial interest in the subject matter in controversy..." or when the judge has "any other interest that could be affected substantially by the outcome of the proceeding." However, "ownership in a mutual or common investment fund that holds securities is not a 'financial interest' in such securities unless the judge participates in the management of the fund." Canon 3C(3)(c)(i).

> *"These Code provisions, read together, provide that investments in a mutual fund will normally avoid triggering recusal concerns* with respect to the securities that the fund holds, with some exceptions discussed below. Consistent with the "safe harbor" concept, the Committee has advised that investment in a mutual fund does not convey an ownership interest in the companies whose stock the fund holds.

> "Although the Code does not define "mutual or common investment fund," *determining whether a fund qualifies for the safe harbor contemplated under Canon 3C(3)(c)(i) involves several related considerations, including:* (1) the *number of participants* in the fund; (2) the *size and diversity of fund investments*; (3) the *ability of participants to direct their investments*; (4) the ease of access to and frequency of information provided about the fund portfolio; (5) the *pace of turnover in fund investments*; and (6) any *ownership*

[8] See, https://www.uscourts.gov/rules-policies/judiciary-policies/ethics-policies
[9] See, https://www.uscourts.gov/rules-policies/judiciary-policies/ethics-policies/published-advisory-opinions

*interest investors have in the individual assets* of the fund.

"... For example, we have advised that a judge's former law firm's 401(k) retirement plan could not be considered a mutual fund under the Code because it was managed by the law firm, had a relatively small number of participants, and provided the participants with detailed access to investment information regarding the plan. ... In contrast, the Committee concluded that a law firm's retirement fund qualified for the mutual fund exception because there were a large number of participants, the participants could not directly control the investments, the participants could not easily access information about the fund's portfolio, and the fund's assets turned over frequently."
(All italic and bold emphasis added.)

Applying the six "related considerations" mentioned in Advisory Opinion No. 106, Judge

Brown finds:

(1)    In June 27, 2019, there were 23,663 members of the Guam Government Retirement Fund.[10]

(2) The GGRF has a highly valuable, widely diversified portfolio of investments (common stocks, government securities, mutual funds, etc., of over $2.3 Billion in the latest annual report (see n. 6, *supra*)).

(3) The Fund has three funds from which the employee may choose broad options subject to plan conditions: a defined benefit plan, a defined contribution plan, and a deferred compensation plan which members may avail as a supplement to either of the other two plans.   In no such plan does a member have the ability to direct payments, except between plans (not particular investments).   4 GCA § 8143 requires that funds be invested by or under authority of the Board of Trustees, not members.

(4)  The Trustees of the fund are tasked with the administration and investment of the fund (§§ 8143 and 8165), not the members.

(5)  The Fund publishes an annual report of its operations, but not a detailed statement of individual fund investments; its website (https://www.ggrf.com/) does not regularly carry any information about the fund portfolio.  The fund does not seem to publish any churn rate indicating turnover.

(6)  The fund members are not given ownership of any particular asset of the plans or Fund.

---

[10] https://www.guampdn.com/story/news/2019/06/26/ only-96-govguam-retirement-fund-members-voted-trustees/1556015001/

It may well be that a member of the GGRF is entitled to certain monetary *benefits*, which Judge Fitzpatrick has acknowledged receiving, but a member's receipt of money as a financial *benefit* of membership does not constitute a "financial *interest*" in the context of § 6501(d)(4)(A) *unless* the member "participates in management of the fund". Judge Brown finds no allegation or evidence in the record that would suggest that Judge Fitzpatrick in any way "participates in management of the fund". Judge Fitzpatrick does not possess a disqualifying financial interest as alleged by Objectors.

As a separate objection, Objectors allege "Judge Fitzpatrick has a financial interest in the Retirement Fund which could be 'substantially affected' by the outcome of this case." This is predicated on § 6501(b)(4): "A Judge shall also disqualify ... [where] she ... has ... *any other interest* that could be substantially affected by the outcome of the proceeding." Objectors, however, have not alleged or identified any interest other than a member's financial benefits. Thus, Judge Brown finds that Objectors have not made the case for any disqualifying ground described in § 6501(b)(4) as alleged .

### (1)(b) Judge Fitzpatrick's Claimed Defense of Necessity

Judge Fitzpatrick defended her qualification to sit and hear the financial interest controversy, despite her failure to dispute the allegations made that she does have a disqualifying financial interest,[11] because "[a]ll the Judges of the Superior Court have disqualified themselves

---

[11] Judge Brown has found that the alleged financial interest disqualification does not pass the definitional test as a "financial interest" within the contemplation of §§ 6105(b)(4) and (d)(4)(A). Nevertheless, because the matter of judges being disqualified for necessity may repeat, Judge Brown responds toJudge Fitzpatrick's claim with analysis.

therefore the rule of necessity may be applied. Under the rule of necessity, it is the duty of the disqualified judge to hear and decide a controversy, however disagreeable it may be." She noted "[t]he rule of necessity was invoked" in *Ada v. Gutierrez* 2000 Guam 22". (Disqualification Answer pp. 2-3).

It is true that the *Ada* Court did discuss the applicability of the Necessity Rule, but the discussion was not substantive. *Ada* did not address if it was appropriate in the circumstances of that case; it arose as a question as to what stage in a litigation it should be used if applicable. The Court, in *Ada* , said, "[i]n *Will*, the Court did not hold that every Article III judge had to disqualify himself or herself before it could use this common-law principle. We see no legitimate reason to waste time and other resources when we can apply the rule of necessity immediately." *Id.*, ¶ 14. Ultimately, the Court rejected the request to disqualify the judge in question, negating any need to discuss necessity. *Ada* may have noted a rule of necessity, but it did not *invoke* it, in the sense of calling upon it, as Judge Fitzpatrick suggested. (Disqualification Answer, p. 3.)

In *Will*, *(United States v. Will*, 449 US 200 (1980)) which was an appeal from a Federal District Court, the U.S. Supreme Court explained the cause of necessity in that case:

> "In federal courts generally, when an individual judge is disqualified from a particular case by reason of § 455,[12] the disqualified judge simply steps aside and allows the normal administrative processes of the court to assign the case to another judge not disqualified. In the cases now before us, however, all Article III judges have an interest in the outcome; assignment of a substitute District Judge was not possible. And in this Court, when one or more Justices are recused but a statutory quorum of six Justices eligible to

---

[12] 28 U. S. C. § 455, which is considered to be mirrored in 7 GCA § 6105. "Federal cases are useful in the following examination because Guam's rule on judicial disqualification is based upon the federal law. See 28 U.S.C. § 455(a) (1986)." *Dizon, supra.*, ftnt 2.

act remains available, see 28 U. S. C. § 1, the Court may continue to hear the case. Even if all Justices are disqualified in a particular case under § 455, 28 U. S. C. §2109 authorizes the Chief Justice to remit a direct appeal to the Court of Appeals for final decision by judges not so disqualified. However, in the highly unusual setting of these cases, even with the authority to assign other *federal judges* to sit temporarily under 28 U. S. C. §§ 291-296 (1976 ed. and Supp. III), *it is not possible to convene a division of the Court of Appeals with judges who are not subject to the disqualification provisions* of § 455. It was precisely considerations of this kind that gave rise to the Rule of Necessity."

*United States v. Will*, 449 US 200, 212-213 (1980). Italic emphasis added.

The Federal Judicial Center[13] sponsors the publication, *Judicial Disqualification, An Analysis of Federal Law* Third Edition 2020,[14] which text is referred to herein as the "FJC Disqualification Analysis". The FJC Disqualification Analysis provides an example of application of the necessity factor at, pp. 16-17:

"Courts have used the rule of necessity to reject disqualification in a variety of situations. In *In re Wireless Telephone Radio Frequency Emissions Products Liability Litigation* [170 F. Supp. 2d 1356 (J.P.M.L. 2001)], for example, four of seven members of the Judicial Panel on Multidistrict Litigation (JPML) assigned to hear the matter held stock interests in one or more of the parties. The JPML determined that the rule of necessity precluded disqualification under § 455(a) because there was no statutory provision for substituting panel members, and disqualification would result in fewer than the four judges required by statute to hear the case."

The conundrum of *unavailability* of judges has not appeared to be, as a practicable matter, a big issue in Guam, and has not been one in this particular matter, as can be attested by appointments of Judges *Pro Tempore* Fitzpatrick and Brown in this disqualification dispute. Guam is not as constrained to find qualified Article III judges as the federal courts appear to be. Title 7 GCA § 6108, following in sequence and context with the other statutes concerning

---

[13] The Federal Judicial Center is the education and research agency of the United States federal courts (https://www.fjc.gov/about).
[14] See, https:// www.fjc.gov/content/348974/judicial-disqualification-analysis-federal-law-third-edition.

substance and procedures for judicial disqualification in Guam courts, contemplates the appointment of Judges and Justices *Pro Tempore* "when there is no Judge [or Justice] qualified or available to hear a cause, action or hearing." This mitigates, if not entirely eliminates, the necessity of the rule of necessity in most Guam. Judge Brown finds that Judge Fitzpatrick's claim of necessity on the facts here is misplaced.

**(2) Disqualifying Personal Bias or Prejudice Concerning a Party (§ 6105(b)(1)**

As discussed above, this Objection is laid in two claims, the first one arising from events occurring during the 21-year period of time that Judge Fitzpatrick and Guthrie worked in the AGO. The second claim is made that Judge Fitzpatrick is biased *in favor of* a 35-year close friendship with a woman, Judy Mason, whose husband, Patrick Mason, was another lawyer in the AGO, though now recently deceased.

Objectors *suggest* specific facts relative to the first claim by reference to an "Exhibit 1" meant to be attached to the Statement Objecting to the Competency but wasn't. Objectors cite to 7 GCA § 6105(b)(1), which requires a judge to disqualify if she has a *personal* bias or prejudice *concerning a party* to the proceeding. § 6105(b)(1) is obligatory, but if a Judge does not recuse, which is contemplated in Judge Fitzpatrick's Disqualification Notice, § 6107 allows a party to file a Statement of Objection, objecting to the hearing of the matter by the Judge. The Statement of Objection must, however, set forth the fact or facts constituting the ground of disqualification. Judge Brown has already described the circumstances indicating Objector's attorney made the decision to withhold that Exhibit from this matter leaving the

record devoid of facts or reasons substantiating Objector's claims (see n. 3 and associated text, *supra*). Consequently, with no actual facts adduced, Judge Brown finds that Objectors have failed to make the case for disqualification under this claim of prejudice.

Objectors secondly allege "Judy Mason, is not be eligible for surviving spouse benefits, and that this is the very policy that Objectors are challenging in this lawsuit. Therefore, they allege, Judge Fitzpatrick's willingness to sit on this case *might* be attributable to her intention to rule on this case in such a way that her friend of 35 years becomes eligible for surviving spouse benefits." (Italic emphasis added). Judge Fitzpatrick categorically denied any relationship with Judy Mason of the type or duration alleged or suggested and Objectors have adduced no facts to the contrary or otherwise in substantiation of their claim.

The failed disclosure of facts aside, Judy Mason is not a party to the proceeding, and § 6105(b)(1) applies only where the Judge "has a personal bias or prejudice concerning a party". Consequently, on the state of the record presented, Judge Brown finds that Objectors have failed to make the case for section 6105(b)(1) disqualification under the claim of bias.

Objectors characterize this statement as one in which,

### (3) the Appearance of Impartiality

Objectors cite to grounds for disqualification in 7 GCA § 6105(a): "Any Judge shall disqualify himself or herself in any proceeding in which his or her *impartiality might reasonably be questioned*...." (Italic emphasis added). Factually, as to this objection, Objectors take issue with Judge Fitzpatrick's following *depiction* of a particular adversarial case:

> "During the period Joseph A. Guthrie was Chief Deputy he filed a lawsuit to stop about 6 attorneys from getting increments. I was one of the attorneys. Upon

information and belief the case was eventually dismissed. We received our increments and attorney fees." Objection Statement, p 9.

Objectors found it necessary to provide a more formal case caption and date of judgement in 2009. and the "relevant part" of the judgement:

> "Judgment is hereby entered in favor of the Defendant and Defendant Intervenors on the basis of: 1) the April 28, 2006 Decision and Order granting judgment on the pleadings in favor of the Defendant and Intervenor Weinberg; 2) the July 11, 2006 Decision and Order granting intervention to Haeuser, Fitzpatrick and Rivera; 3) the November 8, 2006 withdrawal of the Plaintiff's motion for clarification of judgment; and the December 12, 2006 Stipulation and Order to recover attorney's fees." Id., p 9-10

And, they corrected the record:

> "Contrary to Judge Fitzpatrick's statement in Form 3, the case did not involve "increments", if that word is understood to refer to the pay raises received by Government of Guam employees every two years for satisfactory performance. Instead, the case involved how attorneys should be "slotted" on an attorney pay scale enacted by an attorney pay law.

> "Also contrary to Judge Fitzpatrick's statement in Form 3, Judge Fitzpatrick was not one of only six attorneys affected. The attorney pay law affected all Government attorneys, including all attorneys at the Office of Attorney General and Public Defender.

> "Most significant, Judge Fitzpatrick omitted to indicate on Form 3 that she was an intervenor in the case. The above quoted statement in Form 3 would lead the reader to believe that she was a defendant in the case, and that case was brought by Guthrie to prevent her from receiving increment(s). Not so, Judge Fitzpatrick was an intervenor in a case involving interpretation of an attorney pay law affecting all Government attorneys.

> "It would strain a reasonable observer's credulity that Judge Fitzpatrick could serve as an impartial judge of a case involving a party when she had opposed that very same party as a self-appointed spokesman for fellow employees." Id., pp 10-11.

What impartiality is evident in these facts that could possibly be reasonably questioned? Harboring long held grudges arising in the context of litigated cases has generated a judicial reaction which limits the effect of disqualification under § 6105(a). (FJC Disqualification Analysis, pp. 33-34):

> "This so-called 'extrajudicial source' doctrine is born of the common-sense view that ordinarily the circumstances suggesting or creating the appearance of partiality cannot reasonably be derived from information revealed in the normal course of litigation because it is natural for judges to form attitudes about litigants and issues before the court as the facts unfold, and no reasonable person would question the impartiality of judges who do. [Italics added.] As the Supreme Court explained later, in *Liteky v. United States* (510 U.S. 540 (1994)):
>
>> "The judge who presides at a trial may, upon completion of the evidence, be exceedingly ill disposed towards the defendant, who has been shown to be a thoroughly reprehensible person. But the judge is not thereby recusable for bias or prejudice, since his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings, and are indeed sometimes (as in a bench trial) necessary to completion of the judge's task."
>
> ***
>
> "The general rule that bias or prejudice must be derived from an extrajudicial source and that comments based on a judge's observations in pending proceedings will not ordinarily form the basis for disqualification *applies equally to comments a judge makes in earlier proceedings*. In *Liteky v. United States*, the Supreme Court made two relevant observations. First, it stated that in *United States v. Grinnell Corp.*, it "clearly meant by 'extrajudicial source' a source outside the judicial proceeding at hand—which would include as extrajudicial sources earlier judicial proceedings conducted by the same judge." *This observation, however, must be understood in the larger context of the opinion as a whole, in which the Court rejected rigid adherence to an extrajudicial source doctrine (which it characterized not as a "doctrine" but as a "factor").*
>
> "The Court's second, and ultimately more important, observation — regardless of whether prior proceedings are characterized as an "extrajudicial source"—was that *for purposes of disqualification analysis, a judge's comments in pending and past proceedings are on equal footing*:
>
>> "*[O]pinions formed by the judge on the basis of facts introduced or events*

*occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible."*

*Id.* at 39-40 (internal citations omitted; italic emphasis added).

*Liteky v. United States,* 510 US 540, 555-556 (1994) summarizes this "extrajudicial" factor:

"[O]pinions formed by the judge on the basis of *facts introduced or events occurring in the course* of the current proceedings, or of prior proceedings, *do not constitute a basis for a bias or partiality* motion *unless they display a deep-seated favoritism or antagonism* that *would make fair judgment impossible.* Thus, *judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel,* the parties, or their cases, *ordinarily do not support a bias or partiality challenge.* They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. ... <u>Not</u> **establishing bias or partiality, however, are** expressions of judicial remarks during the course of a trial , dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display." (Italic emphasis in words "may", "will", and "not" are in original; other bold, italicized, and underlined emphasis added.)

Judge Brown finds that Objectors' animus driving this allegation of impartiality is not from an "extrajudicial" source, given Objectors' focus on the prior proceeding as the genesis of the alleged impartiality. It was, rather, from an adversarial judicial source that included the adversarial participation of *Pro Tempore* Judge Fitzpatrick and Guthrie.

Objectors claim Judge Fitzpatrick is disqualified for "impartiality [which] might be reasonably questioned" simply because of her characterization of judicial matters involving the parties to this recusal request:

"During the period Joseph A. Guthrie was Chief Deputy he filed a lawsuit to stop about 6 attorneys from getting increments. I was one of the attorneys. Upon information and belief the case was eventually dismissed. We received our increments and attorney fees."

Objectors have made more of this than meets the reasonable eye of a reasonable person.

"A statement is legally insufficient [for disqualification] if, on its face, it fails to allege 'any facts that would serve as grounds for disqualification under Guam law ....' *Johnny*, 2006 Guam 10 ¶ 19."

\*\*\*

"[A] statement of objection is legally insufficient if it includes only conclusory or irrelevant statements, such as:

> "[C]onclusions; references to copious transcripts without citation to specific excerpts; *allegations of facts not pertinent or appropriate* to the issues to be determined in the hearing; *material not legally indicative of bias or prejudice*, such as judicial opinions expressed in the discharge of litigation and legal rulings; judicial *reactions based on actual observance in participation in legal proceedings*; and *references to circumstances so inconsequential as to be no indication whatsoever of hostility and nonprobative of any bias or prejudice.*"

*Van Dox v. Super. Ct. (Alcorn) 2008 Guam 7* ¶¶ 27 and 29 (italic emphasis added).

The "might reasonably be questioned" standard in section 6105(a) is often described as an "objective" one that the requires objectivity, not subjectivity. It requires an *appearance* of bias or prejudice produced in the style of paint by numbers, not by spaghetti splatter on a wall.

*US v. DeTemple*, 162 F. 3d 279, (4th Cir. 1998) involved a disqualification claim based on the functionally equivalent Guam statutes, 7 GCA §§ 6105(a) and (b)(1), and made the following observations pertinent to Objectors' assertion as to what "would strain a reasonable observer's credulity":

> "In sum, § 455(a) forbids more than actual bias. Obviously, it is possible for facts to indicate that a judge might be biased such that recusal is required under §455(a) even though none of those facts indicates actual bias necessitating recusal under§ 455(b). But *whether that has happened here is another matter.*

> "Congress revised the disqualification statute in 1974 and instituted an objective standard in § 455(a) to replace the old subjective standard. *This objective standard asks whether the judge's impartiality might be questioned by a reasonable, well-informed observer who assesses 'all the facts and circumstances.'*
> \*\*\*

"[B]ut *it does not require a judge to recuse himself because of 'unsupported, irrational, or highly tenuous speculation'*. To disqualify oneself in such circumstances would be to set 'the price of maintaining the purity of appearance' too high – it would allow litigants 'to exercise a negative veto over the assignment of judges'. Congress never intended the disqualification statute to yield this result.

"*Application of the objective standard thus requires a nuanced approach.* On the one hand, we must keep in mind that *the hypothetical reasonable observer is* not the judge himself or a judicial colleague but *a person outside the judicial system.* ... On the other hand, a *reasonable outside observer is not a person unduly suspicious or concerned about a trivial risk that a judge may be biased.* There is always some risk of bias; *to constitute grounds for disqualification, the probability that a judge will decide a case on a basis other than the merits must be more than 'trivial.'*

"We believe that a reasonable outside observer, aware of all the facts and circumstances of this case, would not question Judge Stamp's impartiality. *To be sure, DeTemple has amassed quite a list of allegedly disqualifying conflicts. But an observer, cognizant of all relevant information, would know that these multiple contentions not only lack a factual basis demonstrating impropriety, but also fail to create even the appearance of bias.*"
*Id.* at 286-287 (internal quotations and citations omitted; italics added).

It is materially pertinent in this matter that Guthrie is *not* a person "outside the judicial system", yet it is his view that he articulates, e.g., " To Guthrie, Judge Fitzpatrick's use of the word 'Masons' was an obvious ploy to hide the fact that Judge Fitzpatrick has socialized with Judy Mason since 2004" (Objection Statement p 8). Note, also, Objectors' assertion, that "[i]t would strain a reasonable observer's credulity that Judge Fitzpatrick could serve as an impartial judge of a case involving a party when she had opposed that very same party as a self-appointed spokesman for fellow employees" (id., p 11), contradicts the holding in *DeTemple, supra,* that "a reasonable outside observer is not a person unduly suspicious or concerned about a trivial risk that a judge may be biased. There is always some risk of bias; to constitute grounds for disqualification, the probability that a judge will decide a case on a basis other than the merits must be more than 'trivial.'"

Guam case law is to similar effect:

"Ordinarily, a judge's antipathy for or bias against an attorney is not sufficient grounds for disqualification of the judge. ... For bias against an attorney to require disqualification, the bias must be 'of a continuing and personal nature and not simply bias against the attorney because of his conduct'."

***

Similarly, disqualifying bias must normally stem from extrajudicial sources, but there may be an exception where 'such pervasive bias and prejudice is shown by otherwise judicial conduct as would constitute bias against a party'. '[P]redispositions developed during the course of a trial will sometimes (albeit rarely) suffice'."

*Van Dox, supra*, 35 (internal citations omitted).

On the sparse factual record in this matter, Judge Brown strains to find any appearance of Judge Fitzpatrick's impartiality in the matter, let alone actual bias, prejudice or impartiality. The distances between Objectors' conclusory statements and adduced facts are too tenuous, if existent. "We would not want judges to construe our decision in *Dizon* to mean that they should distance themselves from cases at the slightest suggestion [of impartiality]." *Ada, supra*, ¶ 15. Judge Brown finds that Judge Fitzpatrick is competent to hear the captioned matter.

## FAILURE TO VERIFY THE OBJECTION STATEMENT

In addition to the substantive deficiencies of the Objectors' Statement of Objection discussed above, Judge Brown has found that Objector's Objection Statement is formally deficient. It was not verified.

As Objectors' forcefully insisted, repeatedly (see, Objection Statement pp 7-8), 7 GCA 6107 provides, in relevant part, that "[e]very such statement and every answer shall be verified in the manner prescribed for the verification of pleadings".

"The California Court of Appeals observed in *People v. Ladd*, 181 Cal. Rptr. 29 (Ct. App. 1982) that a party may file a statement of objection, but '[i]f such a statement is not verified, it is formally defective and may be stricken out or disregarded.' *Johnny*, supra, ¶ 13. *** We believe that no reason exists to warrant departing from California case law. To the contrary, policy concerns weigh in favor of a rule permitting challenged judges to strike a formally defective statement of objection." Id, ¶ 14.

Judge Brown finds that Judge Fitzpatrick did provide a proper verification of her Objection Answer. However, unmentioned in Judge Fitzpatrick's Objection Answer, Judge Brown has not found Objectors' Statement of Objection to bear or duly incorporate any statement or form of the verification required. The Statement of Objection is thereby found to be formally deficient as well, and on that basis the disqualification challenge also fails.

## CONCLUSION

For the foregoing reasons, Petitioners/Plaintiffs have not stated grounds under 7 GCA §§ 6105(a), (b)(1), or (b)(4), warranting Judge Fitzpatrick's disqualification, and have, in addition, failed the verification requirement of section 6107 requiring Petitioners/Plaintiffs' Statement Objecting to the Competency of Judge *Pro Tem* Maria Fitzpatrick to Hear This Case, Petitioners/Plaintiffs' Request for Recusal of Judge Fitzpatrick is hereby **DENIED**.

SO ORDERED:  **JUL 16 2021**

HONORABLE JUDGE *PRO TEMPORE*
JOHN THOS. BROWN